UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANK OF AMERICA, N.A.,

          Plaintiff,                           Hon. Janet T. Neff

v.                                        Case No. 1:21-cv-430

KETURAH MIXON, et al.,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Bank of America, N.A. (BANA) filed a complaint in in this Court on May 24, 2021, against Defendants Keturah Mixon and Doe Defendant Kingdom Warriors Ministry (KWM), seeking to quiet title to certain real property commonly known as 243 Devon Road, Battle Creek, Michigan 49015 (the Property). In particular, BANA seeks an order finding and directing that: (1) an unauthorized and forged satisfaction of mortgage be expunged and ruled of no force and effect; (2) the mortgage that Mixon granted on the Property is a valid first mortgage against the Property; and (3) any interests in the Property held by Mixon and/or KWM are subject and junior to the mortgage granted by Mixon. BANA invoked this Court's diversity jurisdiction. (ECF No. 1 at PageID.2.)

Presently before me is Defendant Mixon's Motion to Dismiss for Lack of Standing, Lack of Jurisdiction, and Failure to State a Claim.[1] (ECF No. 14) The motion is fully briefed. Pursuant to 28 U.S.C. § 636(1)(B), I recommend that Mixon's motion be **DENIED.**

---

[1] Mixon's request for oral argument is denied, as the briefs adequately develop the issues before the Court.

## I.  Background

The following facts are taken from BANA's complaint, as well as the publicly-available records of this Court.

On January 29, 2010, Andrew A. Askler and Arthur J. Quinn conveyed the Property to Defendant Mixon by warranty deed for the sum of $121,000.00. (ECF No. 1 at PageID.3; ECF No. 1-1.) Mixon financed the purchase with a loan in the amount of $118,800.00 from Top Flite Financial Inc. As security for the loan, Mixon granted a purchase money mortgage on the Property to Mortgage Electronic Registration Systems Inc. (MERS), solely as nominee for Top Flight.[2] (ECF No. 1 at PageID.3.; ECF No. 1-2.) On or about July 21, 2011, MERS assigned the mortgage to BAC Home Loans Servicing LP, f/k/a/ Countrywide Home Loans Servicing, LP. (ECF No. 1 at PageID.3–4.)

On or about February 8, 2012, Mixon and BANA, as successor by merger to BAC Home Loans Servicing, LP, entered into a Loan Modification Agreement. (ECF No. 1 at PageID.4; ECF No. 1-4.) On July 21, 2014, an unauthorized and forged satisfaction of mortgage was created and purportedly executed by BANA. (ECF No. 1 at PageID.4; ECF No. 1-7.) On October 13, 2014, Mixon conveyed her interest in the Property to Antonio Mixon by quit claim deed. (ECF No. 1 at PageID.4; ECF No. 1-5.)

On December 2, 2014, Mixon recorded a notice of lis pendens against the Property with the Calhoun County Register of Deeds, stating that she had filed an action regarding the Property against BANA and several other defendants in the Calhoun County Circuit. (ECF No. 1 at

---

[2] Splitting of the note and mortgage was valid under Michigan law. *See Residential Funding Co., L.L.C. v. Saurman*, 490 Mich. 909, 910 (2011) ("'It has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands.... The choice of a mortgagee is a matter of convenience.'" (quoting *Adams v. Niemann*, 46 Mich. 135, 137 (1881)).

PageID.4; ECF No. 1-6.) In fact, Mixon filed a complaint asserting a quiet title action in the Calhoun County Circuit Court on or about December 16, 2014, against BANA and John Does 1-20, which BANA removed to this Court on May 8, 2015, on the basis of diversity jurisdiction. *Mixon v. Bank of America N.A., et al.*, No. 1:15-cv-486 (W.D. Mich.) (*Mixon I*) (ECF No. 1; ECF No. 1-4.) Following the removal, BANA filed a motion to dismiss. Mixon had claimed that she paid the underlying debt secured by the mortgage in full, but BANA submitted documentation "demonstrating that not only has Plaintiff not paid off the debt in question, but instead has failed to regularly make her scheduled mortgage payments." *Mixon I*, ECF No. 16 at PageID.515. In her June 26, 2015 Report and Recommendation, Magistrate Judge Carmody found that the balance of the loan as of March 5, 2015 exceeded $137,000.00 and that Mixon's arguments in support of her quiet title action were frivolous. *Id.* The Court adopted the Report and Recommendation and entered judgment for BANA. *Id.*, ECF Nos. 17 and 18.

Mixon sued BANA again on May 3, 2018, along with others, in this Court alleging various claims under federal and state law. *Mixon v. David Trott, et al.* (*Mixon II*), No. 1:18-cv-499 (W.D. Mich.). BANA filed a motion to dismiss arguing, among other things, that Mixon's claims were barred by res judicata and collateral estoppel. *Mixon II*, ECF No. 36. On August 1, 2018, Magistrate Judge Carmody issued a Report and Recommendation recommending that BANA's motion be granted because res judicata, or claim preclusion, barred Mixon's claims. *Id.*, ECF No. 56. The Court adopted the Report and Recommendation over Mixon's objections and entered judgment for BANA. *Id.*, ECF Nos. 114, 115. Mixon appealed the judgment to the Sixth Circuit, which affirmed the judgment in an unpublished order issued on August 28, 2019. *Id.*, ECF No. 118.

On July 15, 2015, while *Mixon I* was pending, the unauthorized and forged satisfaction of mortgage was recorded in the Calhoun County Register of Deeds. (ECF No. 1 at PageID.4–5; ECF

No. 1-7.) On July 19, 2019, BANA assigned the mortgage to the Secretary of Housing and Urban

Development (HUD). (ECF No. 1 at PageID.5; ECF No. 1-8.) On October 26, 2016, HUD assigned

the mortgage to Wilmington Savings Fund Society, FSB as trustee for Stanwich Mortgage Loans

Trust A. (ECF No. 1 at PageID.5; ECF No. 1-9.) Although Mixon had previously conveyed her

interest in the Property to Antonio Mixon pursuant to the October 13, 2014 quit claim deed, on

August 20, 2020, she executed a warranty deed purporting to convey her interest in the Property

to Antonio Mixon.[3] (ECF No. 1 at PageID.5; ECF No. 1-10.) Also on August 20, 2020, Antonio

Mixon executed a warranty deed conveying the Property to KWM. (ECF No. 1 at PageID.6; ECF

No. 1-11.) On March 4, 2021, Wilmington Savings Fund Society, FSB as trustee for Stanwich

Mortgage Loans Trust A assigned the mortgage to BANA. (ECF No. 1 at PageID.6; ECF No. 1-

12.)

## II.  Discussion

Mixon raises a number of issues in her motion, including that the Court lacks subject matter

jurisdiction, BANA lacks standing to maintain its quiet title claim, BANA fails to state a claim,

and BANA's claim is barred by the doctrines of res judicata and collateral estoppel. Mixon asserts

several other arguments based on affirmative defenses, which need not be addressed at this

juncture as they are not appropriate for consideration on a Rule 12(b)(6) motion to dismiss. *See*

*Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014) (noting that "a plaintiff need not respond

to a motion to dismiss with affirmative matter raising a triable issue of fact on an affirmative

defense").

---

[3] BANA erroneously refers to Antonio Mixon as "Antonio Dixon." (ECF No. 1 at PageID.5.)

### A.    Subject Matter Jurisdiction

BANA alleges that the Court has diversity jurisdiction over this matter, which allows a federal court to exercise jurisdiction in civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). When the defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving jurisdiction. *Wisecarver v. Moore*, 489 F.3d 747, 749 (6th Cir. 2007).

Here, there is no question that BANA and Mixon are diverse. Mixon is a citizen of Michigan, residing at 243 Devon Road, Battle Creek, MI 49015. In response to the May 26, 2021 Order to Show Cause (ECF No. 8), BANA stated that it is a national banking association and a citizen of Delaware that maintains its principal offices at 100 N. Tyron Street, Charlotte, North Carolina. (ECF No. 10.) A national banking association is a corporate entity "chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006). For purposes of diversity, such an entity is a citizen of the "State designated in its articles of association as its main office." *Id.* at 318 (citing 28 U.S.C. § 1348). In its supplemental brief regarding the existence of KWM, BANA states that its articles of association designate Charlotte, North Carolina as its main office. (ECF No. 44 at PageID.247–48.) BANA did not attach a copy of its articles to its supplemental brief. However, "[a] national bank's articles of association and the location of its main office can be judicially noticed." *Akins v. U.S. Bank, N.A.*, No. 18-2725, 2019 WL 1495300, at *2 (W.D. Tenn. Apr. 4, 2019) (citing *U.S. Bank, N.A. for Registered Holders of ML-CFC Commercial Mortg. Tr. 2007-7 v. Miller*, No. CV 12-05632, 2013 WL 12183653, at *5 (C.D. Cal. Jan. 16, 2013), and *Sami v. Wells Fargo Bank*, No. C 12–00108 DMR, 2012 WL 967051, *2 (N.D. Cal. Mar. 21, 2012)). Public online records published by the Office of the Comptroller of the Currency confirm that BANA's main office designated in

5

its articles of association is Charlotte, North Carolina. *See* National Banks & Federal Branches and Agencies active as of 11/30/2021.[4]

In her brief in support of her motion, Mixon asserted, without citation to any evidentiary support, that KWM is a citizen of Delaware, (ECF No. 15 at PageID.95), even though the September 13, 2019 warranty deed from Antonio Mixon lists KWM's address as 110 Knapp Drive, Battle Creek, MI 49015. (ECF No. 1-11.) Mixon argued that diversity is lacking because KWM and BANA are both citizens of Delaware. But as shown above, BANA is a citizen of North Carolina, so even accepting Mixon's unsupported assertion, BANA has shown that complete diversity exists in this case.

In her response to BANA's supplemental brief, Mixon makes a new, unsupported assertion that KWM "is a Church, a Non-Profit Charity that is domiciled in Delaware with locations in several states which includes that [sic] State of North Carolina." (ECF No. 46 at PageID.327.) Not only is this latest assertion unsupported, but it is also contrary to Mixon's prior representation to the Court that she and her husband "do not have, nor could they remember any information that pertains to Defendant [KWM], other than the citizenship and domicile information that was previously listed in the filings of this instant lawsuit." (ECF No. 33 at PageID.228.) In any event, BANA has adequately demonstrated that the Court has diversity jurisdiction exists over this matter.

BANA has also presented substantial proof that KWM is a fictitious entity that cannot be served with process. First, BANA's counsel states in her affidavit that a search of the Michigan Department of Licensing and Regulatory Affairs' (MDLRA) online filing system for "Kingdom Warriors Ministry" produced no records and that a search for "Kingdom Warriors" disclosed a

---

[4] *See* https://www.occ.treas.gov/topics/charters-and-licensing/financial-institution-lists/index-financial-institution-lists.html

Michigan non-profit entity named "Kingdom Warriors Ministries, Inc." that was dissolved October 1, 2012. (ECF No. 17-1 at PageID.131.) Second a search of the address for KWM recited in the warranty deed (110 Knapp Drive, Battle Creek, MI 49015) revealed that a storage unit facility and other businesses are located at that address. Counsel also found a church named Connect City Church associated with that address, but a search of MDLRA's online filing system for "Connect City Church" and "Connect City" disclosed no results for either name. A search of Calhoun County records for "Kingdom Warriors Ministry" disclosed no records, but a search of such records for "Connect City Church" associated with the Knapp Drive address revealed that Nicholas and Jill Nelson of 113 Grandville, Galesburg, Michigan, were listed as the owners doing business as Connect City Church until April 2, 2019, when their filing expired. Finally, an in-person inspection of the Knapp Drive address revealed no evidence of a business or church using the name Kingdom Warriors Ministry. (*Id.* at PageID.131, 134–35.) Third, counsel searched, or caused to be searched, the Employer Identification Number (EIN) for KWM that Mixon and Antonio Mixon included in the Affidavit of Matters Affecting Realty they each filed with the Calhoun County Register of Deeds on or about August 20, 2020. (ECF No. 17-3 at PageID.142; ECF No. 17-4 at PageID.153.) A search of the Internal Revenue Service's online organization search feature for "Kingdom Warriors Ministry" produced no results. A search of the same database for EIN 84-3030726 produced no results. Finally, a search of the same database for "Kingdom Warriors" produced 15 results, none of which was connected with the EIN identified in the Mixons' affidavits or located in Delaware or Michigan. (*Id.* at PageID.131–34.) Fourth, counsel searched the records of the State of Delaware for "Kingdom Warriors Ministry," "Kingdom Warriors Ministries," "Kingdom Warrior Ministry," and "Kingdom Warrior Ministries," with no results. (*Id.* at PageID.134.) In addition, BANA has submitted a certificate from the Secretary of State of Delaware certifying the

non-existence of a Delaware or foreign corporation under the name "Kingdom Warriors Ministry."
(ECF No. 44-1.)

Finally, pursuant to my August 25, 2021 Order authorizing BANA to obtain limited
discovery regarding KWM's existence and citizenship (ECF No. 35), BANA served on Mixon and
Antonio Mixon subpoenas and notices of depositions to be held on October 20, 2021. (ECF Nos.
36, 37.) However, it appears that Antonio Mixon evaded service of the subpoena. Thus, BANA
served subpoenas on Mixon and Antonio Mixon on September 22, 2021, for depositions to be
conducted on November 17, 2020. (ECF No. 38.) The same day, BANA served re-notices of
deposition for the Mixons by first-class mail. (ECF Nos. 39, 40.) In addition, BANA had a
subpoena for deposition personally served on Mixon on October 4, 2021, (ECF No. 42), and a
subpoena for deposition personally served on Antonio Mixon on October 14, 2021. (ECF No. 43.)
The Mixons failed to appear for their depositions on the scheduled date. (ECF Nos. 44-3, 44-4.)
Although Mixon disputes that BANA accomplished personal service or service by mail (ECF No.
46 at PageID.328–29), she fails to offer an affidavit or other proof to support this claim. Moreover,
because Mixon is a party in this case, a subpoena was unnecessary to compel her attendance at the
deposition, as a notice of deposition was all that was required. *See In re FCA US LLC Monostable
Elec. Gearshift Litig.*, No. 16-MD-02744, 2017 WL 4216193, at *2 (E.D. Mich. Sept. 22, 2017)
(noting that "Rule 45 is procedurally inapplicable in the context of a party's deposition, which may
be taken upon issuance of a written notice, without need for a subpoena"). Thus, service of the
notice of deposition by first-class mail sufficed for Mixon's attendance.

In light of the foregoing, I recommend that the Court conclude not only that it has diversity
jurisdiction over this matter, but that it find from the record that KWM is a fictious entity upon
which service of process cannot be made.

### B.     Standing

Mixon next argues that BANA lacks standing to bring this action. Because BANA's claim is premised on diversity jurisdiction, it "must have standing under both Article III and state law in order to maintain [its] cause of action." *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009) (citing, among others, *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005)). Here, Mixon only raises Article III standing. (ECF No. 15 at PageID.96.)

 Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). BANA easily meets these requirements. First, it has adequately alleged an injury to its mortgage lien on the Property created by an unauthorized and forged satisfaction of the mortgage recorded in the Calhoun County Register of Deeds, which impairs or clouds its ability to enforce its rights under the mortgage. Second, BANA's allegations show that its injury is fairly traceable to the unauthorized and forged satisfaction of judgment. Finally, an order declaring the unauthorized and forged satisfaction of mortgage of no force and effect and determining that any interests held by Mixon and KWM are subject to and junior to BANA's interest will redress BANA's claimed injury. Thus, this argument lacks merit.

### C.     Failure to State a Claim

Mixon argues that BANA fails to state a claim upon which relief may be granted. BANA's action is governed by Mich. Comp. Laws. § 600.2932, which provides, in pertinent part:

(1) Interest of plaintiff. Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

(2) Mortgagees, eligibility. No action may be maintained under subsection (1) by a mortgagee, his assigns, or representative for recovery of the mortgaged premises, until the title to the mortgaged premises has become absolute, or by a person for the recovery of possession of premises, which were sold on land contracted, to whom relief is available under subdivision (1) of section 5634.

To state a claim for quiet title under this section, a plaintiff "must allege: '(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim.'" *Khadher v. PNC Bank, N.A.*, 577 F. App'x 470, 478 (6th Cir. 2014) (quoting Mich. Ct. R. 3.411(B)(2)). A plaintiff in an action to quiet title to land bears the burden to make out a prima facie case that he has a superior claim to the land in question. *See Stern v. Marjieh*, No. 295487, 2011 WL 1140129 at *1 (Mich. Ct. App., Mar. 29, 2011).

BANA's complaint has alleged all of the necessary elements. First, BANA lays out its interest as the current assignee of the mortgage, including the various conveyances by which it received its interest as the current mortgage holder. (ECF No. 1 at PageID.3–6.) Second, BANA sets forth the interest that KWM might claim in the Property and alleges that Plaintiff resides at the Property and that her interest in the Property, if any, remains subject to the debt and the mortgage, contrary to the unauthorized and forged satisfaction of mortgage recorded on July 15, 2015. (*Id.* at PageID.1–2, 6.) Finally, BANA has alleged facts demonstrating that its interest is superior to those of Mixon and KWM, *i.e.*, the loan remains unpaid and the mortgage is still outstanding. (*Id.* at PageID.6.)

Mixon contends that BANA's action fails because she does not claim an interest in the Property. (ECF No. 46 at PageID.331.) But that is not true, as she continues to reside there and

disputes BANA's allegations that the satisfaction of mortgage was unauthorized and forged and that the mortgage remains outstanding. Mixon further contends that BANA's action fails under Section 600.2932(2) because BANA has failed to show that its "title to the mortgaged premises has become absolute." (*Id.*) This argument lacks merit, as BANA does not seek possession of the Property. "While § 2932(2) may preclude obtaining a judgment of possession, it does not preclude a party from litigating the validity of a mortgage interest in that property." *JP Morgan Chase Bank, N.A. v. Mammo*, No. 315967, 2014 WL 5408967, at *3 (Mich. Ct. App. Oct. 23, 2014) ("Because count I of Chase's complaint simply sought an order validating Chase's mortgage interest in the property, not possession of the property, MCL 600.2932(2) did not prohibit Chase from litigating the validity of its interest in the property.").

### D.    Res Judicata and Collateral Estoppel

Mixon contends that BANA's action is barred by the doctrines of res judicata and collateral estoppel based on *Mixon I* and *Mixon II*. Because the judgments in both cases were rendered in federal court, the preclusive effect is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *see also* Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

"The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). "The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it." *Id.* "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Thus, claim preclusion not only bars the parties from relitigating issues that were actually litigated, but also from

11

relitigating issues that could have been raised in the prior action. *J.Z.G. Res., Inc.*, 84 F.3d at 214. Claim preclusion applies where the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action. *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999) (en banc) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892. Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

Here, because BANA was a defendant in both of the prior cases, it would have been required to assert its quiet title action as compulsory counterclaim pursuant to Fed. R. Civ. P. 13, at least in *Mixon I*. In both cases, however, BANA filed pre-answer motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Sixth Circuit has held that a defendant who files a motion to dismiss without filing an answer does not lose its claim. *United States v. Snider*, 779 F.2d 1151, 1157 (6th Cir. 1985). This is because, until the motion to dismiss is decided, it is unknown whether the plaintiff has a claim, and "[w]ithout a valid claim there can be no counterclaim, compulsory or permissive." *Id.*; *see also Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 459 (6th Cir. 2013) (noting that "a party is not required to assert a counterclaim where it successfully files a pre-answer

motion to dismiss"). Accordingly, BANA's claim in this case is not barred by claim or issue preclusion. On the other hand, the determination in *Mixon I* that Mixon owed in excess of $137,000.00 as of March 5, 2015, will likely have preclusive effect in this case under the doctrine of issue preclusion, although the issue is not before the Court at this time.

### IV.   Conclusion

For the foregoing reasons, I recommend that the Court **deny** Mixon's motion to dismiss, (ECF No. 14), and that it find that: (1) diversity jurisdiction exists over BANA's claim; and (2) KWM is a fictitious entity that cannot be served with process.

Dated: December 22, 2021                                  /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).